Case 1:21-cv-00548-JMB-SJB ECF No. 1, PageID.1 Filed 06/25/21 Page 1 of 14

FILED - GR
June 25, 2021 3:06 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: tlb SCANNED BY: JW /6-23

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* JARED M. DEPOUW,<br><br>Plaintiff-Relator,<br><br>v.<br><br>ANES SUHONJIC, SEMSI SALJA, AND<br>DMR TRANSPORTATION, LLC,<br><br>Defendants. | **FILED UNDER SEAL**<br>**PURSUANT TO**<br>**31 U.S.C. § 3730(b)(2)**<br><br>Case No. **1:21-cv-548**<br>Hala Y. Jarbou - U.S. District Judge<br><br>Hon.<br><br>**JURY TRIAL**<br>**DEMANDED** |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff-Relator Jared M. DePouw ("Relator"), for himself and on behalf of the United States of America, by and through his attorneys Tessa K. Muir and Mikayla S. Hamilton of Springstead Bartish Borgula & Lynch, PLLC, hereby files this Complaint under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, and the False Claims Recovery Act of 2009 ("FERA"), 31 U.S.C. §§ 3729-3733, and states as follows.

### INTRODUCTION

1. On March 27, 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, which in part provided emergency relief to small businesses for employee retention and certain other expenses, through a program referred to as the Paycheck Protection Plan ("PPP"). The CARES Act empowers the federal government's Small Business Administration ("SBA") to make loans to eligible small business under the PPP to keep workers paid and employed. *See* Small Business Act, 15 U.S.C. §§ 636(a)(36), *et seq.*

1

2. In order to obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized representative of the business.[1] The PPP loan application requires the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications that the applicant "is eligible to receive a loan" under the PPP, and that it will use loan proceeds "consistent with the Paycheck Protection Program Rules." In the PPP loan application, the small business (through its authorized representative) must state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures are used to calculate the amount of money the small business is eligible to receive under the PPP. In addition, businesses applying for a PPP loan must provide documentation showing their payroll expenses.

3. A PPP loan application must be processed by a participating lender. If a PPP loan application is approved, the participating lender funds the PPP loan using its own monies, which are 100% guaranteed by the SBA. Data from the application — including information about the borrower, the total amount of the loan, and the listed number of employees — is transmitted by the lender to the SBA in the course of processing the loan

4. PPP loan proceeds must be used by the business on certain permissible expenses: payroll costs, interest on mortgages, rent, and utilities. The PPP allows the interest and principal on the PPP loan to be forgiven entirely if the business spends the loan proceeds on these expense items within a designated period of time after receiving the proceeds and uses a certain amount of the PPP loan proceeds on payroll expenses.

---

[1] PPP First Draw Borrower Application form available at https://www.sba.gov/document/sba-form-2483-ppp-first-draw-borrower-application-form (last visited June 23, 2021).

5. On December 27, 2020, the Consolidated Appropriations Act, 2021 (the "Act"), H.R. 133, made additional funds available for loans under the PPP. The Act enables PPP borrowers who exhausted their initial PPP loans to apply for a second loan, or a "second draw" ("PPPSD").

6. The PPPSD loans generally operate on the same terms and conditions as PPP loans, subject to some exceptions. PPPSD loans may only be made to PPP borrowers who: (a) have used (prior to origination of the PPPSD loan) all proceeds of their PPP loan, (b) employ no more than 300 employees, and (c) demonstrate at least a 25% reduction in gross receipts in 2020 relative to the same time period in 2019.

7. The PPPSD loan application has the same general requirements as the PPP loan application, but it requires the small business (through its authorized representative) to certify, among other things, that: (a) the small business received a PPP loan and, before the second PPPSD loan is disbursed, will have used the full amount of the first PPP loan; (b) the "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant"; and (c) the small business has "realized a reduction in gross receipts in excess of 25%" in 2020 relative to the same time period in 2019.[2]

8. Defendant DMR Transportation, LLC ("DMR") is a trucking company located in Grand Rapids, Michigan, with approximately 75 employees. In 2020, during the COVID-19 pandemic, DMR applied for and received a loan through the PPP. DMR was qualified to receive the first PPP loan, which has now been forgiven.

9. In February 2021, DMR applied for and received a PPPSD loan in the amount of $290,854.03. DMR was not eligible for this loan because the company did not meet the requirement of having a 25% or more reduction in gross receipts between comparable quarters in

---

[2] PPP Second Draw Borrower Application form available at https://www.sba.gov/document/sba-form-2483-sd-ppp-second-draw-borrower-application-form (last visited June 23, 2021).

2019 and 2020. In fact, DMR's gross receipts were actually higher in all quarters in 2020 compared to 2019.

10. In submitting the PPPSD loan application to the SBA, DMR, through its joint owners, Defendants Anes Suhonjic and Semsi Salja ("Owners") (collectively, with DMR, "Defendants"), knowingly submitted a false claim and falsely certified that DMR was eligible to receive the PPPSD loan.

11. Furthermore, in preparing its application for the PPPSD loan, DMR's Owners both offered Relator money to falsify financial statements for the application to ensure DMR qualified for the loan, knowing that DMR did not qualify.

12. Relator brings this *qui tam* action on behalf of the United States under the FCA to recover treble damages sustained by, and civil penalties and restitution owed to the United States as a result of Defendant's fraud.

13. This Complaint has been filed *in camera* and under seal pursuant to 31 U.S.C. § 3730(b)(2). It will not be served on Defendants unless and until the Court so orders. Relator has provided to the Attorney General of the United States and to the United States Attorney for the Western District of Michigan material evidence and information related to the Complaint pursuant to 31 U.S.C. § 3730(b)(2) and Fed. R. Civ. P. 4(d).

14. Relator is the original source of the information supporting the allegations contained in this Complaint and makes the allegations in this Complaint based on his own knowledge, experience, and observations.

15. There has been no public disclosure, relevant under 31 U.S.C. § 3730(e), of the "allegations or transactions" in this Complaint. Alternatively, to the extent that any such public

disclosure has been made, Relator possesses information that is independent of and materially adds to any allegations that may have been publicly disclosed.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action is brought for violations of the False Claims Act, 31 U.S.C. § 3729 *et seq.* and the False Claims Recovery Act of 2009, 31 U.S.C. §§ 3729-3733, both federal statutes.

17. Venue is proper in the Western District of Michigan pursuant to 28 U.S.C. § 1391 and 31 U.S.C. § 3732(a), because DMR is located in and transacts business in this District, and the events and omissions that give rise to these claims occurred in this District.

18. This Complaint is filed within the time period prescribed by 31 U.S.C. § 3731(b).

## THE PARTIES

19. Relator brings this action on behalf of the United States. The United States, acting through the SBA, has disbursed to DMR a total of $719,906.03 in PPP loans, including the $290,854.03 PPPSD loan in February 2021 for which DMR submitted falsified financial information in its application.

20. Relator is a citizen of the United States and resides in Wyoming, Michigan, located in the Western District of Michigan. Relator has been employed by DMR since October 2015 as a controller.

21. DMR is a Michigan Limited Liability Company with its principal place of business at 5380 36th Street SE, Grand Rapids, Michigan 49512.[3] DMR is a trucking company.

---

[3] An alternate address for the same location lists Kentwood as the city for Defendant DMR, with all other information the same.

22. Anes Suhonjic and Semsi Salja are the joint owners of DMR. Defendant Anes Suhonjic resides in Byron Center, Michigan. Defendant Semsi Salja resides in Kentwood, Michigan.

## FACTUAL ALLEGATIONS

23. In his role as the controller for DMR, Relator manages the company's finances, including accounting, bookkeeping, payroll, payables, receivables, and loan applications.

24. In April 2020, Relator prepared DMR's application for the first PPP loan. Relator has no concerns regarding either DMR's qualifications to receive the first PPP loan or the use of the proceeds from that loan. This first PPP loan has now been forgiven.

25. Subsequently, in February 2021, both of DMR's Owners, Anes Suhonjic and Semsi Salja, came to Relator and asked him to prepare an application for DMR to receive a second PPP loan (PPPSD). Relator informed both Owners that DMR would not qualify for a PPPSD loan because DMR did not meet the requirement of having a 25% or more reduction in gross receipts between comparable quarters in 2019 and 2020. DMR's gross receipts were in fact higher for all quarters in 2020 compared with 2019.

26. During that meeting, Anes Suhonjic told Relator that all the other trucking companies in town were getting the second PPP loan.

27. The Owners, acting together in a joint conversation, offered Relator $25,000.00 in exchange for applying for the PPPSD loan and told him not to tell anyone about either the falsified application or the bribe money. Relator refused the money. The Owners then offered to fund Relator's 401K account with the $25,000.00, which Relator also refused.

28. Semsi Salja's wife, Indira Salja, was also in the room when the Owners offered Relator this money and when he refused.

29. That day, Relator went home and told his girlfriend, Maia Sieplinga, about this interaction and the Owners' attempt to bribe him. Relator also later told his parents.

30. The Owners continued to insist that DMR apply for the PPPSD loan. Both Owners demanded that Relator falsify financial statements to ensure DMR would qualify for the PPPSD loan.

31. Out of fear of losing his job, Relator prepared the loan application documents for the Owners' signature, including falsified quarterly financials. The true and accurate numbers in the financial spreadsheet were generated by a formula, whereas the false numbers were numbers that Relator manually typed in to manipulate the gross revenue.

32. Relator told the Owners that the financial spreadsheets the Owners were signing for the loan application were false and that DMR did not in fact have the required gross revenue losses in 2020 to qualify.

33. The Microsoft Excel version of these spreadsheets is on the DMR server at the main DMR office, located at 5380 36th Street, Grand Rapids, MI.

34. Both Owners signed every page of the application, including the falsified financials. Both Owners knew the financial information was false and that, without the falsification, DMR would not qualify for the PPPSD loan.

35. Relator submitted the signed documents to Horizon Bank, Grand Rapids branch, through Horizon Bank's online application portal.

36. Upon information and belief, Horizon Bank is insured by the Federal Deposit Insurance Corporation (FDIC), as the bank's website references FDIC insurance.[4]

---

[4] *See* Horizon Bank website, https://www.horizonbank.com/personal/save-invest/savings-money-market-cds/certificate-of-deposits (last visited June 23, 2021); https://www.horizonbank.com/business/bank/savings-money-market-cds (last visited June 23, 2021).

37. Horizon Bank informed Relator that the initial financial information did not reflect enough of a gross revenue loss to qualify for the PPPSD loan.

38. The initial version Relator submitted through the Horizon Bank portal showed a loss of only approximately 23%, but the loan required a loss of 25% or more.

39. Under continued pressure from the Owners, Relator sent the bank "corrected" financial statements via email, which included numbers that reflected an approximate 26% loss of gross revenue. He used the email address(es) jared@dmrtransportation.com and/or accounting@dmrtransportation.com to send the records.

40. Both Owners physically wet-signed every page of the initial financial statements showing an artificial 23% loss, as well as the "corrected" version showing a 26% loss. The Owners knew that both versions were false and urged Relator to submit them to Horizon Bank for the PPPSD application.

41. Horizon Bank then preapproved DMR for a PPPSD loan in the amount of roughly $290,000.00.

42. Owner Anes Suhonjic told Relator that "we should shop around" to other banks for a higher loan amount. Mr. Suhonjic eventually backed down from this request after Relator informed him that doing so would only increase the chances of the fraud being discovered.

43. On February 23, 2021, Horizon Bank delivered a cashier's check to DMR for the PPPSD loan in the amount of $290,854.03. The check was made out to DMR Transportation.

44. A month or so earlier, before applying for the PPPSD loan, DMR was working with the same Horizon Bank location to apply for a truck loan. In support of that loan application, Relator submitted DMR's true and accurate 2020 financial statements. Horizon Bank was in

possession of these statements, which did not match the financials submitted in support of the PPPSD loan.

45. Relator does not know if anyone at Horizon Bank realized the discrepancy, but he thought it might be caught in underwriting for the PPPSD loan. No one at Horizon Bank raised suspicions.

46. On February 25, 2021, two days after Horizon Bank delivered the cashier's check to DMR, Relator hired undersigned counsel to help him figure out what to do. On March 4, 2021, his attorney contacted the United States Attorney's Office for the Western District of Michigan ("U.S. Attorney's Office") to inform the office that Relator would like to report information pertaining to PPP loan fraud.

47. In early March 2021, Relator asked the DMR Owners if they were going to deposit the check for the second PPPSD loan, as he had not seen it deposited in any of the company bank accounts. The Owners then asked Relator if he was going to tattle on them to the government, to which he responded that he would not.

48. On March 17, 2021, Relator provided the above information to the U.S. Attorney's Office and two federal investigators during a video conference call under proffer protection.

49. Relator subsequently provided relevant emails, PPPSD application materials, and financial statements to the U.S. Attorney's Office, all of which he had in his possession prior to the proffer interview and provided voluntarily.

50. The check for the PPPSD loan was held by owner Semsi Salja's wife, Indira Salja, and was eventually deposited into the DMR Huntington money market account on March 22, 2021.

## COUNT I: FALSE CLAIMS ACT – PRESENTATION OF FALSE CLAIMS

### (Defendants DMR, Anes Suhonjic, and Semsi Salja)

51. Relator incorporates by reference all prior paragraphs of this Complaint as if fully restated herein.

52. Defendants knowingly presented or caused to be presented false claims for payment to the SBA, through Horizon Bank, when they submitted DMR's fraudulent PPPSD loan application.

53. Defendants falsely certified on these forms that DMR was eligible to receive the PPPSD loan, which included the certification that it had at least a 25% reduction in gross receipts in 2020 relative to the same quarters in 2019.

54. The submission of this false application caused the SBA to pay out monies, through Horizon Bank, that it would not have paid if it had known the falsity of Defendants' certifications.

55. The SBA and the banks administering PPP loans are grantees or other recipients of money from the United States Government within the meaning of 31 U.S.C. § 3729(b)(2)(A)(ii). All such money is to be spent to advance the United States' interest in effectuating the purposes of the CARES Act.

56. Defendants' knowing presentation of a false or fraudulent application to the SBA and Horizon Bank was in violation of 31 U.S.C. § 3729(a)(1)(A).

57. Each presentation of a false or fraudulent claim to the SBA or Horizon Bank is a separate violation of the FCA.

58. By reason of the false or fraudulent claims that Defendants knowingly presented, the United States has been damaged in an amount to be proven at trial.

## COUNT II: FEDERAL FALSE CLAIMS ACT – FALSE RECORD OR STATEMENT

### (Defendants DMR, Anes Suhonjic, and Semsi Salja)

59.     Relator incorporates by reference all prior paragraphs of this Complaint as if fully restated herein.

60.     Defendants knowingly made and used false financial records and statements when they caused claims for payment to be submitted to the SBA, through Horizon Bank, on behalf of Defendant DMR, including false statements that Defendant DMR was eligible to receive the PPPSD loan and false financial records to establish eligibility for the PPPSD loan.

61.     The making and use of these false financial records and statements caused the SBA to pay out monies, through Horizon Bank, that it would not have paid if it had known of the falsity of Defendants' records and statements.

62.     The SBA and the banks administering PPP loans are grantees or other recipients of money from the United States Government within the meaning of 31 U.S.C. § 3729(b)(2)(A)(ii). All such money is to be spent to advance the United States' interest in effectuating the purposes of the CARES Act.

63.     Defendants' knowing making and use of false financial records or statements material to false or fraudulent claims for payments submitted to the SBA and Horizon Bank violated 31 U.S.C. § 3729(a)(1)(B).

64.     Each making or use of a false record or statement to the SBA or Horizon Bank is a separate violation of the FCA.

65.     By reason of the false or fraudulent records or statements that Defendants' knowingly made or used, the United States has been damaged in an amount to be proven at trial.

## COUNT III (IN THE ALTERNATIVE): FEDERAL FALSE CLAIMS ACT – AVOIDING OBLIGATION

**(Defendants DMR, Anes Suhonjic, and Semsi Salja)**

66. Relator incorporates by reference all prior paragraphs of this Complaint as if fully restated herein.

67. Relator asserts Count III in the alternative to Counts I and II.

68. Defendants knowingly concealed or improperly avoided Defendant DMR's obligation to return PPPSD loans to the SBA or Horizon Bank after receiving PPPSD loan proceeds for which Defendant DMR was ineligible.

69. Defendants knew DMR was ineligible for the PPPSD loan, and that, accordingly, the PPPSD loan it received was an overpayment from the SBA.

70. The SBA and the banks administering PPP loans are grantees or other recipients of money from the United States Government within the meaning of 31 U.S.C. § 3729(b)(2)(A)(ii). All such money is to be spent to advance the United States' interest in effectuating the purposes of the CARES Act.

71. Defendants' knowing concealment or avoidance of their obligations to repay the SBA violated 31 U.S.C. § 3729(a)(1)(B).

72. Each instance thereof is a separate violation of the FCA.

73. By reason of Defendants' concealment and avoidance of its obligations to repay the SBA, the United States has been damaged in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Relator respectfully requests that this Court enter judgment in his favor, and that of the United States, against Defendants DMR, Anes Suhonjic, and Semsi Salja granting the following on all Counts:

(A) an award to the United States for treble its damages, a statutory penalty for each violation of the FCA, and for its costs pursuant to 31 U.S.C. § 3729(a)(3);

(B) an award to Relator in the maximum amount permitted under 31 U.S.C. § 3730(d), and for the reasonable attorney's fees and costs he incurred prosecuting this action;

(C) awards to the United States and Relator for pre- and post-judgment interest at the rates permitted by law; and

(D) an award of such other and further relief as this Court may deem to be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Relator demands trial by jury on all questions of fact raised by the Complaint.

Dated:  June 25, 2021                          Respectfully Submitted,

*/s/ Tessa Muir*
Tessa K. Muir
Mikayla S. Hamilton
Springstead Bartish Borgula & Lynch, PLLC
60 Monroe Center, Suite 500
Grand Rapids, Michigan 49503
(616) 458-5500
tessa@sbbllaw.com
mikayla@sbbllaw.com

## CERTIFICATE OF SERVICE

I certify that this Complaint has been filed *in camera* and under seal pursuant to 31 U.S.C. § 3730(b)(2) and, as such, it will not be served on Defendants unless and until the Court so orders. On June 24, 2021, Relator, through his attorneys, notified the United States Attorney's Office for the Western District of Michigan that the Complaint had been finalized and would be filed with the Court under seal. The United States Attorney's Office requested that the copy for the Attorney General of the United States be sent by mail.

On June 25, 2021, a copy of the Complaint and Relator's evidentiary disclosures was sent by first class mail to the Attorney General of the United States and the United States Attorney for the Western District of Michigan at the following addresses:

The Honorable Merrick Garland
Attorney General of the United States
United States Department of Justice
950 Pennsylvania Ave. N.W.
Washington, D.C. 20530-0001

U.S. Attorney Andrew Byerly Birge, Western District of Michigan
C/O AUSA Adam Townshend
330 Ionia Ave. N.W.
Suite 501
Grand Rapids, MI 49503

Additionally, undersigned counsel provided the same materials to the United States Attorney's Office for the Western District of Michigan via email to adam.townshend.usdoj.gov on June 25, 2021.

Dated:  June 25, 2021                             */s/ Tessa Muir*
                                                  Tessa K. Muir
                                                  Springstead Bartish Borgula & Lynch, PLLC
                                                  60 Monroe Center, Suite 500
                                                  Grand Rapids, Michigan 49503
                                                  (616) 458-5500
                                                  tessa@sbbllaw.com