# EXHIBIT A

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the United States Small Business Administration ("SBA") (collectively, the "United States"), DMR Transportation, L.L.C. ("DMR"), Semsi Salja ("Salja"), Anes Suhonjic ("Suhonjic," and together with Salja and DMR, the "DMR Parties"), and Jared DePouw (Relator, and together with the United States and DMR, "the Parties"), through their authorized representatives.

## RECITALS

A.  DMR is a trucking and transportation logistics company located at 5380 36th Street SE, Grand Rapids, MI 49512.

B.  On or about February 15, 2021, DMR applied through Horizon Bank for an SBA-guaranteed Second Draw Paycheck Protection Program ("PPP") Loan in the amount of $290,855.00. DMR's application was approved and DMR received a Second Draw PPP Loan in the amount of $290,855.00 (the "Second Draw PPP Loan"). On or about September 6, 2021, DMR applied to Horizon Bank for complete forgiveness of the Second Draw PPP Loan.

C.  On June 25, 2021, Relator filed a *qui tam* action in the United States District Court for the Western District of Michigan captioned, *United States ex rel. DePouw v. DMR Transportation, LLC, et al.*, No. 1:21-cv-548 (W.D. Mich.), pursuant to the *qui tam* provisions of the False Claims Act (the "FCA"), 31 U.S.C. § 3730(b) (the "Civil Action"). Relator alleges that the DMR Parties fraudulently obtained the DMR Second Draw PPP

Loan by falsely certifying its eligibility for a Second Draw PPP Loan and submitting false financial records in support of the Second Draw PPP Loan application.

  D. The United States contends that it has certain civil claims, including claims arising under the FCA and the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), against the DMR Parties arising from false certifications and false documents that DMR supplied to Horizon Bank between February 15, 2021 and September 6, 2021 in connection with the DMR Second Draw PPP Loan. Specifically, the United States alleges that:

  a. In its Second Draw PPP Loan application, submitted to Horizon Bank on or about February 15, 2021, DMR knowingly and falsely certified that (1) the company realized a reduction in gross receipts of at least 25% between Q2 2019 and Q2 2020; and (2) information in DMR's Second Draw PPP Loan Application, and information provided in all supporting documents, was true and accurate in all material respects.

  DMR, however, did not realize a reduction of at least 25% in gross receipts between Q2 2019 and Q2 2020. To disguise that fact—and to conceal the fact that DMR was therefore ineligible for a Second Draw PPP Loan—DMR fraudulently manipulated quarterly balance sheets and other financial records that were signed by DMR's principals and supplied to Horizon Bank in connection with the Second Draw PPP Loan.

  b. In its Second Draw PPP Loan Forgiveness Application, submitted to Horizon Bank on or about September 6, 2021, DMR knowingly and falsely certified that the Second Draw Loan Proceeds were used to pay eligible business costs when, in fact, DMR held and never spent the loan proceeds. DMR also submitted documents in support of the Forgiveness Application, including a "PPP Full Time Equivalency Analysis," to falsely make it appear as though DMR spent the Second Draw PPP Loan proceeds on payroll.

The conduct described in this Paragraph D is referred to below as the "Covered Conduct."

  E. This Settlement Agreement is neither an admission of liability by the DMR Parties, except to the extent admitted in any guilty pleas in related criminal cases against

Salja and Suhonjic in the Western District of Michigan, nor is this Agreement a concession by the United States that its claims are not well founded.

F.  Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the FCA Settlement Proceeds, as that term is defined in Paragraph 2, below, and to Relator's reasonable expenses, attorneys' fees, and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

## TERMS AND CONDITIONS

1.  The DMR Parties shall repay the Second Draw PPP Loan to Horizon Bank, plus interests and associated costs, in the amount of TWO HUNDRED NINETY-THREE THOUSAND, SIX HUNDRED SIXTY-SEVEN DOLLARS AND NINETY-THREE CENTS ($293,667.93) no later than fourteen (14) days after receiving wiring instructions from Horizon Bank after the Effective Date of this Agreement.

2.  The DMR Parties shall pay to the United States NINETY-FOUR THOUSAND, FOUR HUNDRED TWENTY-EIGHT DOLLARS ($94,428.00) (the "FCA Settlement Proceeds"), none of which is restitution, by electronic funds transfer pursuant to wire instructions to be provided by the U.S. Attorney's Office for the Western District of Michigan no later than fourteen (14) days after the Effective Date of the Agreement.

3.  The DMR Parties shall pay to the United States SIX HUNDRED ELEVEN THOUSAND, NINE HUNDRED FOUR DOLLARS AND SEVEN CENTS ($611,904.07) (the "FIRREA Settlement Proceeds"), none of which is restitution, by electronic funds transfer pursuant to wire instructions to be provided by the U.S. Attorney's

Office for the Western District of Michigan no later than fourteen (14) days after the Effective Date of the Agreement.

4. Conditioned upon the United States receiving the FCA Settlement Proceeds, and as soon as feasible after receipt, the United States shall pay $14,164.20 to Relator by electronic funds transfer (the "Relator's Share").

5. Relator claims entitlement to reasonable expenses, attorney's fees, and costs pursuant to 31 U.S.C. § 3729(d)(1) against the DMR Parties. If the DMR Parties and Relator are unable to reach agreement on reasonable expenses, attorney's fees, and costs absent Court intervention, Relator will submit a fee petition to the United States District Court for the Western District of Michigan seeking payment of such reasonable expenses, attorney's fees, and costs against the DMR Parties.

6. Subject to the exceptions in Paragraph 8 (concerning reserved claims), below, and upon the United States' receipt of the FCA and FIRREA Settlement Proceeds, the United States releases the DMR Parties from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729–3733, the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, 12 U.S.C. § 1833a, the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812, or the common law theories of breach of contract, payment by mistake, unjust enrichment, and fraud.

7. Subject to the exceptions in Paragraph 8 below, and upon the United States' receipt of the FCA Settlement Proceeds, Relator, for himself and for his heirs, successors, attorneys, agents, and assigns, releases the DMR Parties from any civil monetary claim the

4

Relator has on behalf of the United States for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729–3733.

8. Notwithstanding the releases given in Paragraph 6 of this Agreement, or any other term of this Agreement, the following claims and rights of the United States are specifically reserved and are not released:

    a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b. Any criminal liability;

    c. Except as explicitly stated in the Agreement, any administrative liability or enforcement right, or any administrative remedy, including the suspension and debarment rights of any federal agency;

    d. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

    e. Any liability based upon obligations created by this Agreement;

    f. Any liability of individuals, other than Salja and Suhonjic;

    g. Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

    h. Any liability for failure to deliver goods or services due; and

    i. Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

9. Relator and his heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon Relator's receipt of the Relator's Share, Relator and his heirs,

successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

10. Conditioned upon Relator's receipt of attorney's fees and costs identified in Paragraph 5, above, Relator, for himself, and for his heirs, successors, attorneys, agents, and assigns, releases the DMR Parties and their officers, agents, and employees from any liability to Relator arising from the filing of the Civil Action, or under 31 U.S.C. § 3730(d) for expenses or attorneys' fees and costs.

11. The DMR Parties waive and shall not assert any defenses the DMR Parties may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

12. The DMR Parties fully and finally release the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that the DMR Parties have asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct or the United States' investigation or prosecution thereof.

13. The DMR Parties fully and finally release the Relator from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated)

that the DMR Parties have asserted, could have asserted, or may assert in the future against the Relator, related to the Covered Conduct and the Relator's investigation and prosecution thereof.

  14. a. <u>Unallowable Costs Defined</u>: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of the DMR Parties, and their present or former officers, directors, employees, shareholders, and agents in connection with:

  (1) the matters covered by this Agreement and any related plea agreements;

  (2) the United States' audits and civil and criminal investigations of the matters covered by this Agreement;

  (3) the DMR Parties' investigation, defense, and corrective actions undertaken in response to the United States' audits and civil and criminal investigations in connection with the matters covered by this Agreement (including attorneys' fees);

  (4) the negotiation and performance of this Agreement and any related plea agreements; and

  (5) the payments the DMR Parties make to the United States pursuant to this Agreement and any payments that the DMR Parties may make to Relator, including costs and attorneys' fees,

are unallowable costs for government contracting purposes (hereinafter referred to as "Unallowable Costs").

  b. <u>Future Treatment of Unallowable Costs</u>: Unallowable Costs will be separately determined and accounted for by the DMR Parties, and the DMR Parties shall not charge such Unallowable Costs directly or indirectly to any contract with the United States.

7

    c. <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: Within 90 days of the Effective Date of this Agreement, the DMR Parties shall identify and repay by adjustment to future claims for payment or otherwise any Unallowable Costs included in payments previously sought by the DMR Parties or any of their subsidiaries or affiliates from the United States.  The DMR Parties agree that the United States, at a minimum, shall be entitled to recoup from the DMR Parties any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted requests for payment.  The United States, including the Department of Justice and/or the affected agencies, reserves its rights to audit, examine, or re-examine the DMR Parties' books and records and to disagree with any calculations submitted by the DMR Parties or any of their subsidiaries or affiliates regarding any Unallowable Costs included in payments previously sought by the DMR Parties, or the effect of any such Unallowable Costs on the amount of such payments.

  15. This Agreement is intended to be for the benefit of the Parties only.

  16. Upon receipt of the FCA Settlement Proceeds described in Paragraph 2, above, the Parties shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1).

  17. Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

  18. Each Party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

  19. This Agreement is governed by the laws of the United States.  The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States

District Court for the Western District of Michigan. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

20. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

21. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

22. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

23. This Agreement is binding on the DMR Parties' successors, transferees, heirs, and assigns.

24. This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

25. All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

26. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

**THE UNITED STATES OF AMERICA**

|  |  | MARK A. TOTTEN<br>United States Attorney |
|---|---|---|
| DATED: 5/18/22 | BY: *Adam B. Townshend* | ADAM B. TOWNSHEND<br>Assistant U.S. Attorney<br>P.O. Box 208<br>Grand Rapids, MI, 49501<br>Tel: (616) 456-2404 |

**RELATOR**

DATED: _____    BY: _____
                        JARED DEPOUW


DATED: _____    BY: _____
                        TESSA K. MUIR
                        SPRINGSTEAD, BARTISH, BORGULA & LYNCH PLLC
                        60 Monroe Center St. NW, No. 500
                        Grand Rapids, MI 49503

                        *Counsel for Relator*

## THE UNITED STATES OF AMERICA

MARK A. TOTTEN
United States Attorney

DATED: _____   BY: _____
ADAM B. TOWNSHEND
Assistant U.S. Attorney
P.O. Box 208
Grand Rapids, MI, 49501
Tel: (616) 456-2404

## RELATOR

DATED: 5/16/22   BY: _____
JARED DEPOUW

DATED: 5/16/2022   BY: _____
TESSA K. MUIR
SPRINGSTEAD, BARTISH, BORGULA & LYNCH PLLC
60 Monroe Center St. NW, No. 500
Grand Rapids, MI 49503

*Counsel for Relator*

10

## THE DMR PARTIES

DATED: 05-18-22     BY: _____
                         For DMR Transportation, L.L.C.:

                         SEMSI SALJA
                         in his capacity as President
                         of DMR Transportation, L.L.C.

DATED: 05-18-22     BY: _____
                         ANES SUHONJIC

DATED: 5-18-22      BY: _____
                         GARY J. MOUW
                         RONALD G. DEWAARD
                         VARNUM LLP
                         333 Bridge Street NW, No. 1700
                         Grand Rapids, MI 49501

                         *Counsel for DMR and Anes Suhonjic*

DATED: 05-18-22     BY: _____
                         SEMSI SALJA

DATED: May 18, 2022 BY: _____
                         CHARLES E. CHAMBERLAIN, JR.
                         WILLEY & CHAMBERLAIN LLP
                         300 Ottawa Ave. NW, No. 810
                         Grand Rapids, MI 49503

                         *Counsel for Semsi Salja*